**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GERALD THOMAS OBERG,

    Petitioner,

    v.

TOM L. CAREY, Warden,

    Respondent.

No. C 04-5446 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has chosen not to file a traverse. The matter is submitted.

## BACKGROUND

A jury convicted petitioner on five counts: possession of methamphetamine for sale (Cal. Health & Safety Code § 11378 (count one)); transportation of methamphetamine (Cal. Health & Safety Code § 11379(a) (count two)); being under the influence of methamphetamine (Cal. Health & Safety Code § 11550(a) (count three)); possession of controlled substances paraphernalia (Cal. Health & Safety Code § 11364 (count four)); and driving with a suspended license (Cal. Veh. Code § 14601(a) (count five)). Exh. 3 (Clerk's Transcript, Vol. 3) at 626.[1] In a bifurcated proceeding, the jury found that petitioner had suffered two prior strikes as defined in California's three-strikes law. *See* Cal. Pen. Code §§ 667(b)-(i), 1170.12. These were incurred when petitioner entered into a plea bargain in

---

[1] Citations to "exh." are to the record lodged with the court by the Attorney General.

1980 to reduce two acts of burglary of an inhabited dwelling from first degree burglary to second degree burglary. Exh. 3 at 627, 629. As a result of his two prior strikes, the court sentenced petitioner to twenty-five years to life on count one. It stayed the life term on count two and imposed concurrent ninety-day jail terms on counts three through five. *Id.* at 673-675.

The California Court of Appeal affirmed petitioner's convictions and sentence and the California Supreme Court denied petitioner's application for review. Petitioner filed two subsequent rounds of state habeas petitions; all of the state petitions were denied.

The following facts are distilled from the opinion of the California Court of Appeal. *See* exh. 11 (opinion of the California Court of Appeal) at 1-3.

Two San Jose police officers saw petitioner make an illegal left turn. A check of his car's license plate revealed that the registration had expired in March 1995, despite the 1998 registration tag on the rear license plate. Upon stopping the car and obtaining identification, the officers learned that petitioner's driver's license had been suspended. Petitioner was the sole occupant of the vehicle.

Petitioner told Officer Cary that he had purchased the vehicle two to three weeks earlier, had been doing work on it, and had recently finished painting the car. Officer Cary noticed that petitioner appeared to be under the influence of a stimulant and that petitioner had fresh puncture wounds on his left arm.

Officer Cary searched the car and found a small leather vinyl case attached to a magnet, which he recognized as a container used to conceal narcotics in or on an automobile. Although the pouch had been lying on top of some other items behind the driver's seat, petitioner denied knowledge of the pouch and contended that it must have been there when he bought the car. Meanwhile, Officer Lee found a plastic box wedged in the right front wheel well. The box contained four syringes, a glass pipe, an electronic gram scale, several small unused plastic baggies, a baggie containing powder residue, and another baggie containing approximately half an ounce of methamphetamine.

The trial court admitted evidence regarding petitioner's 1987 conviction for the

possession of methamphetamine, finding that the prior crime was sufficiently similar in nature as to indicate a common scheme in the way petitioner had concealed the drugs in his car. Like the present offense, the 1987 case arose from a traffic stop where petitioner was the sole occupant of the vehicle. The officer who stopped petitioner in 1987 noticed that the registration sticker had been altered to read "88" although the registration had actually expired in 1985. The officer in 1987 found a pouch attached to the engine compartment with a large magnet; it contained drug paraphernalia and a gram of methamphetamine. Petitioner pled guilty to possession of methamphetamine.

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes

3

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

The standard of review is somewhat different if the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *Plascencia v. Alameda*, 467 F.3d 1190, 1197-98 (9th Cir. 2006). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

## DISCUSSION

One of the four issues which petitioner raised in his petition was dismissed by the court on initial review for failure to state a constitutional issue. As his remaining grounds for habeas relief, petitioner asserts that: (1) the introduction of evidence at trial regarding his 1987 conviction for possession of methamphetamine to show a common scheme violated his due process rights; (2) the State breached the terms of petitioner's 1980 plea bargain by charging the resulting convictions as prior strikes in his current case; and (3) he was denied effective assistance of counsel because his appellate counsel did not raise issue two on appeal, nor did appellate counsel argue that the 1980 convictions were no longer

4

strikes after an amendment to the statutory definition mandated by Proposition 21.   1.

*Admission of Evidence of Prior Offense*

Petitioner contends that the trial court's admission of evidence regarding his 1987 conviction violated his due process rights.

*a.   Due process limit on admission of evidence*

Except for the specific guarantees of the Bill of Rights, the Due Process Clause has "limited operation." *Dowling v. United States*, 493 U.S. 342, 352 (1990). The Supreme Court therefore has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* Specifically, a state court's admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Thus the due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there is no permissible inference the jury could draw from the admitted evidence *and* the evidence is of "such quality as necessarily prevents a fair trial," can admission of evidence violate due process. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

*b.   Analysis*

The state appellate courts held that under section 1101(b) of the California Evidence Code, evidence of petitioner's prior crime was admissible to show the similarity ("common plan") between them, which in turn tends to show that it was petitioner who committed the present crime. *See* exh. 11 (opinion of the California Court of Appeal) at 3-6; *see People v. Bradford*, 15 Cal. 4th 1229, 1316 (1997) (prior crime evidence admissible to demonstrate modus operandi when it disclosed common marks or identifiers, that, considered singly or in combination, support a strong inference that the defendant committed both crimes). This decision as to California law binds this court, see *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005), but while adherence to state evidentiary rules suggests that the trial was conducted

in a procedurally fair manner, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness, *Jammal*, 926 F.2d at 919, so the question remains one of whether admission of the evidence rendered the trial fundamentally unfair.

In both the cases, petitioner had been driving a vehicle with a suspended license. Exh. 11 at 5-6. He had altered the registration tags on the cars to look as if the registration was current, although both registrations had actually expired. In both cases, petitioner concealed the drugs outside the car. *Id.* Although in 1987 the pouch containing the drugs was attached the vehicle by a magnet (whereas here, a plastic box containing the drugs was wedged under the wheel of the vehicle), a pouch with a magnet attached was found in the vehicle here. *Id.* Furthermore, "the [trial] court's express findings indicate a careful weighing of probative value against the danger of prejudice." *Id.* at 6-7.

The two occurrences were sufficiently similar that the jury could have drawn the permissible inference from evidence of the first crime that it was petitioner who had concealed the drugs. *See Dowling,* 493 U.S. at 349 (admission of evidence of circumstances surrounding a prior crime for which the accused had been acquitted was permissible to prove the accused's identity, since his actions in commission of both crimes were sufficiently similar); *Jammal,* 926 F.2d at 920 (permissible inference that because defendant had $135,000 in cash in trunk of his car at the time of one stop, the $45,000 in cash in trunk of car at time of another stop was his). And the trial court here performed the "probative value versus prejudice" balancing required by Rule 352 of the California Rules of Evidence, thus "adequately addressing" the concern that the jury could convict a defendant based on inferences drawn from the prior conduct. *See Dowling*, 493 U.S. at 353. For these reasons, admission of the evidence did not render the trial fundamentally unfair, so its admission did not violate petitioner's due process rights.

Because there was no constitutional violation, the state appellate courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

6

2.   *Breach of Plea Bargain*

In 1980 petitioner pled guilty to two counts of second degree burglary pursuant to a plea bargain. He claims that his current sentence violates his due process rights because it is a breach of his 1980 plea agreement. Petitioner seeks to withdraw his plea to the 1980 burglaries or, in the alternative, he seeks specific performance of the plea bargain based on the law as it was in 1980.

   *a.   Breach of plea bargain as due process violation*

Due process requires that "when a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so it can be said to be part of the inducement or consideration, the promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Claims that a plea agreement was breached are analyzed under state contract law. *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987).

   *b.   Analysis*

Petitioner claims that the alleged breach of the plea bargain requires that "at the least petitioner ... be allowed to withdraw his plea to the 1980 burglaries." Pet. at 19. However, in *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394 (2001), the Supreme Court held that with the exception of convictions obtained in violation of the right to counsel, once a state conviction itself is no longer open to direct or collateral attack, it is "conclusively valid." *Id.* at 404. If the conviction is later used to enhance a criminal sentence, a petitioner "may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Id.*

A state conviction is not open to direct or collateral attack if the defendant is no longer in custody under that conviction at the time his petition is filed. *Maleng v. Cook*, 490 U.S. 488, 490, 494 (1989) (per curiam). Petitioner was not in custody for his 1980 conviction when he filed this habeas challenge, so it was no longer open to appeal or direct collateral attack, and under *Lackawanna* he cannot challenge it indirectly via this petition. The remedy of allowing him to withdraw the 1980 plea is not available in this proceeding.

In the alternative, petitioner requests specific performance of the plea bargain based

7

on the law as it stood in 1980. In essence, he contends that his 1980 plea agreements locked in California law as it was at that time. In 1980, section 667 of the California Penal Code provided that if petitioner committed a subsequent felony, his punishment would be increased by one year for a non-serious felony or five years for a serious felony. California's addition of the three-strikes law in 1994, reflected in sections 667(b)-(i) and 1170.12(c) of the Penal Code, allowed for the imposition of a twenty-five years to life sentence for persons with two prior strikes.

Petitioner does not allege that the prosecutor failed to honor any of the terms in his 1980 plea agreement. He does not allege that the prosecutor promised him that his plea agreement would never form the basis of a sentencing enhancement. Nor does he argue that the prosecutor promised him that the law would never change. In fact, a knowing and voluntary plea does not require that a defendant be informed of the possibility of a future enhancement. *United States v. Brownlie*, 915 F.2d 527, 528 (9th Cir. 1990). Petitioner simply argues that because the law did not provide for the three strikes sentencing enhancement at the time he entered into the plea bargain in 1980, he is immune from this particular enhancement.

In *People v. Gipson (In re Gipson)*, 117 Cal. App. 4th 1065 (2004), the court held that California contracts, including plea bargains, are "deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws." *Id.* at 1070 (internal quotation marks and citation omitted). The Ninth Circuit in *Davis v. Woodford*, 446 F.3d 957 (9th Cir. 2006), quoting *Gipson*, recognized this principle of California law. *Id.* at 962.[2]

In this case petitioner's complaint is that the law has changed, not, as in *Davis*, that a plea bargain promise as to a question of fact has been breached. The claim thus is

---

[2] The *Davis* court distinguished *Gipson*, however, on the grounds that when a California plea agreement includes a specific agreement as to how the *facts* can be used, as opposed to an attempt to restrict the applicable law, the agreement is enforceable and breach of it is a due process violation. *Davis*, 446 F.3d at 963. In *Davis* the parties to the plea agreement had agreed that the defendant's conviction pursuant to the plea would be treated as one "prior" rather than two. *Davis*, 446 at 960-61.

8

exactly that rejected in *Gipson*, and recognized as unavailing in *Davis* – that the plea bargain incorporated existing law and could not be varied by later changes in the law. No promise was made that he would not receive a sentencing enhancement for subsequent crimes and *Gipson* and *Davis* establish that there is no implied incorporation of the law as it was at the time of the plea bargain. Because plea bargains are interpreted according to the law of the state in which they are reached, *see Ricketts*, 483 U.S. at 6 n.3, and California contract law incorporates the state's reserve power to amend the law, petitioner's contention that application of current law to him at his sentencing violated his plea bargain is incorrect, and his due process rights were not violated.

The appellate court's rejection of the claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.

       3.    *Ineffective Assistance of Appellate Counsel*

Petitioner contends that his appellate counsel was ineffective because he (1) failed to claim that petitioner's plea agreement was breached; and (2) failed to argue that Proposition 21, which in March of 2000 changed the definition of a burglary strike in sections 667.5(c)(21) and 1192.7(c)(18) of the California Penal Code, prevents his second degree burglary convictions from being counted as strikes.

            *a.*    *Sixth Amendment right to effective assistance of counsel on appeal*

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986). In order to prevail on an ineffective assistance claim, petitioner must establish two things. First, petitioner must show that counsel's performance was deficient, i.e. that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland,* 466 U.S. at 687-88. Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Second, petitioner must establish that he or she was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* If the petitioner cannot establish incompetence under the first prong of *Strickland*, then a federal court considering a habeas ineffective assistance claim does not have to analyze prejudice under the second prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). "Under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002), *rev'd*, 359 F.3d 785 (6th Cir. 2004), *rev'd*, 543 U.S. 447 (2005).

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Id.* at 1434 (footnote and citations omitted). Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason--because he or she declined to raise a weak issue. *Id.*

If the substantive basis of an ineffective assistance claim lacks merit, petitioner has not been prejudiced. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (petitioner could not establish that appellate counsel had been incompetent when the underlying basis for that challenge was improper); *Butcher v. Marquez*, 758 F.3d 373, 378 (9th Cir. 1985) ("[petitioner] claims as well that appellate counsel's failure to argue the issues presented above constituted ineffective assistance of counsel. In view of the fact that those claims have been shown to be invalid [petitioner] would not have gained anything by raising them").

///

*b.     Analysis*

　　*1.     Failure to raise breach of plea agreement claim*

First, regarding petitioner's claim of ineffective assistance concerning the alleged breach of his 1980 plea agreement, the court has concluded above that the substantive basis of this claim is without merit. Because petitioner's plea agreement was not violated, he cannot establish that counsel was incompetent in failing to raise this issue nor can he show he was prejudiced, since he would not have gained anything had the issue been raised. *James*, 24 F.3d at 26.

　　*2.     Failure to raise Proposition 21 issue*

Petitioner also claims that appellate counsel was ineffective in failing to challenge the use of his 1980 convictions as prior strikes. He asserts that they should not have counted as strikes because they were for second degree burglary of inhabited dwellings and Proposition 21, which took effect in March of 2000, amended the three-strikes law to read that only burglaries of the "first degree" are to be counted as strikes. Pet. at 15-16; *see* Cal. Penal Code § § 667.5(c)(21), 1192.7(c)(18).

The original version of section 1192.7(c)(18) listed "burglary of a residence" as a serious felony and a "strike" under California's three-strikes law. *People v. Garrett*, 92 Cal. App. 4th 1417, 1421 (2001). When that version of section 1192.7(c)(18) was adopted, a burglary was burglary in the first degree only if it (1) was in the nighttime and (2) was of an inhabited dwelling or trailer coach, or the inhabited portion of any building. *Id.* at 1423. All other burglaries were of the second degree. Remembering that at that time a burglary was a strike if it were of a residence – with no requirement that the act have been in the nighttime -- it becomes clear that it would have been possible for an offense to be factually a burglary in the second degree and still properly be counted as a strike, if the burglary was of a residence and was committed in the daytime.

In 1982, two years after the second degree burglary convictions at issue here, the "nighttime" requirement was deleted from the definition of first degree burglary. *Id.* Subsequent amendments to the burglary statute do not affect the analysis here. See *id.* at

11

1423-24 (chart showing history of amendments).

Proposition 21, effective in March of 2000, changed the definition of a burglary that qualifies as a strike to "any burglary of the first degree." *Id*. At that time petitioner's direct appeal was pending; he filed his notice of appeal on April 7, 1999, and his opening brief was not filed until October 28, 1999. *See* CT at 676 (notice of appeal); exh. 8, cover. Petitioner contends that his appellate counsel should have argued on appeal that his 1980 convictions for second-degree burglary were not strikes as defined in the newly-adopted Proposition 21.

For purposes of this ruling the court will assume that counsel's performance was deficient, and proceed to consider the prejudice prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697 (court need not determine whether counsel's performance was deficient before examining the prejudice); *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

*Garrett*, decided on October 23, 2001, just short of a year after petitioner's appeal was decided, rejected the same argument petitioner makes here. *Id.* at 1432. The potential strikes in *Garrett* were residential burglaries in the second degree, just as were petitioner's here, and had clearly been strikes until the passage of Proposition 21. The question was whether they still were strikes post-Proposition 21. Despite the actual language of Proposition 21, the *Garrett* court held that all residential burglaries, regardless of their degree, are "strikes" pursuant to section 1192.7(c)(18) of the California Penal Code. *Id*. at 1431-1432. In reaching its conclusion, the *Garrett* court considered the intent of the legislature and the voters in passing Proposition 21. *Id*. at 1426. Voters were informed that Proposition 21 "*adds crimes to the serious and violent felony lists, thereby making offenders subject to longer prison sentences.*" *Id*. (emphasis in original). Because Proposition 21 was enacted to expand the number of crimes in the serious and violent felony lists, the court reasoned that the intent in approving Proposition 21 was to provide additional punishment for specific *conduct* (burglary of an inhabited building), rather than a

12

specific crime (first degree burglary).  *Id.* at 1432.

Two of the three justices who decided petitioner's appeal were on the panel that decided *Garrett*.  This does not, of course, establish with certainty how they would have ruled had petitioner's counsel raised this issue a year before *Garrett*, but it is suggestive.

Given the outcome in *Garrett*, and the overlap of justices, the court concludes that petitioner has not shown "a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different," *id.* at 694, so has not established that he was prejudiced by counsel's failure to raise this issue.  There was no violation of his Sixth Amendment right to effective assistance of counsel.

*c.     Conclusion*

Because there was no constitutional violation, the state courts' rejection of this claim was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court authority.  Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 6, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.04\OBERG446.RUL5